**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cruz Fernandez,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-01670-PHX-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 9), the Commissioner's answering brief (Doc. 11), and Plaintiff's reply (Doc. 12), as well as the Administrative Record (Doc. 8, "AR"), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.    Procedural History

Plaintiff filed an application for benefits on May 28, 2020, alleging disability beginning on March 7, 2018. (AR at 68.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On May 4, 2022, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 68-78.) The Appeals Council later denied review. (*Id.* at 1-3.)

…

…

II.  The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id*. § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

At step one, the ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date. (AR at 71-72.) At step two, the ALJ determined that although Plaintiff had the medically determinable impairments of "knee and shoulder disorders, obstructive sleep apnea, cervical degenerative disc disease, depression, anxiety, and post-traumatic stress disorder," those impairments did not, individually or in combination, significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. (*Id.* at 72.) Thus, the ALJ concluded that Plaintiff did not have a "severe" impairment. (*Id.* at 76.) In light of this determination, the ALJ did not complete steps three, four, or five of the disability analysis. (*Id.* at 78.)

When assessing the severity of Plaintiff's impairments, the Court evaluated Plaintiff's symptom testimony, concluding that although Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." (*Id.* at 73.) Among other things, the ALJ stated that "[t]he record documents numerous instances of symptom magnification, malingering, and lack of effort" and that those considerations, "on top of [Plaintiff's] inconsistent and contradictory statements about his earnings history," undermined "not only his reliability as a reporter but the merits of his case." (*Id.*)

The ALJ also evaluated opinion evidence from various medical sources as part of the step-two severity analysis, concluding as follows: (1) Frank Moussa, M.D., treating physician ("not persuasive"); (2) Keith Cunningham, M.D., consultative examiner ("not persuasive"); (3) L. Zuess, M.D., state agency psychological consultant ("persuasive"); and (4) R. Paxton, M.D., state agency psychological consultant ("persuasive"). (*Id.* at 76-78.)

IV. Discussion

Plaintiff raises three issues: (1) whether the ALJ "erred at step two of the sequential evaluation"; (2) whether the ALJ "erred by failing to fully develop the record"; and (3)

whether the ALJ improperly discredited the opinions of Dr. Moussa. (Doc. 9 at 6.) As a remedy, Plaintiff seeks an order "vacating" the ALJ's finding of non-disability. (*Id.* at 1.)

### A. **Step-Two Severity Determination**

#### 1. The Parties' Arguments

Plaintiff argues that "[t]he ALJ erred at step two of the five-step framework when . . . determining [Plaintiff] did not have severe impairments as to his cervical spine, right shoulder and right knee impairments." (Doc. 9 at 6.)[1] Plaintiff continues: "[O]bjective evidence, alone, is sufficient to establish [Plaintiff's] orthopedic impairments are more than 'slight abnormalities.' First, consistent with [Plaintiff's] complaints of right knee pain with ambulation, his 2018 MRI revealed 'severe' cartilage loss at the weightbearing aspect of the medial femoral condyle among other degenerative arthritic changes. In addition, both the 2018 MRI and a 2019 MRI of his right knee confirmed a complex tear of his medial meniscus. . . . The imaging of [Plaintiff's] right knee, alone, supports more than a minimal impact on his ability to walk and stand for 8 hours per day, 5 days per week and substantial evidence does not support a conclusion to the contrary." (*Id.* at 7-8.) Plaintiff adds that "in addition to [his] right knee impairment, objective evidence also corroborates the presence of 'right shoulder bone-on-bone osteoarthritis with large inferior glenohumeral osteophyte.'" (*Id.* at 8.) Finally, Plaintiff contends that Dr. Moussa's opinions concerning both conditions underscore why they should have been characterized as severe for step-two purposes. (*Id.* at 6-8.)

The Commissioner responds that "it was reasonable that the ALJ found that [Plaintiff's] symptoms did not limit [his] ability to perform basic work activities" and that although "Plaintiff cites evidence of the existence of the conditions, and some related symptoms, he cites minimal evidence of assessed limitations." (Doc. 11 at 3-4.) The Commissioner emphasizes that "Plaintiff cites no reliable opinion that assessed limitations

---

[1] The introductory sentence of Part IV.A of Plaintiff's brief also seems to suggest that the ALJ erred at step two by failing to consider Plaintiff's headache impairment (Doc. 9 at 6), but Plaintiff does not develop any headache-related argument in his opening brief or mention it in his reply brief. Any such argument is thus forfeited.

- 4 -

1  stemming from the conditions" and contends that "[w]ithout any supported medical
2  opinions, as imperatives, containing restrictions, it is very easy for a reasonable mind to
3  see how the ALJ did not conclude that Plaintiff had severe impairment." (*Id.* at 3.)

4        In reply, Plaintiff argues that reliable opinion evidence is not a prerequisite at step
5  two and that his imaging results were alone sufficient to make the required *de minimis*
6  showing. (Doc. 12 at 1-2.) Plaintiff also notes that, in a recent decision, the Ninth Circuit
7  emphasized that "it is relatively rare for an ALJ to deny a claim at step two." (*Id.*, citation
8  omitted.) Finally, Plaintiff contends that the opinions of Dr. Moussa and Dr. Cunningham,
9  even if ultimately deemed unpersuasive by the ALJ, constituted further evidence that his
10 impairments satisfied the step-two severity threshold. (*Id.* at 2-3.)

11       2.    <u>Legal Standard</u>

12       At step two of the sequential evaluation process, the ALJ must determine whether
13 the claimant suffers from a "severe" impairment or combination of impairments. *Smolen*
14 *v. Chater*, 80 F.3d 1273, 1290-91 (9th Cir. 1996). In general, "[t]he step-two inquiry is a
15 de minimis screening device to dispose of meritless claims." *Id.* at 1291. *See also Glanden*
16 *v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) ("Our narrow application . . . places us in
17 good company: nine other circuits have also announced that they view step two as requiring
18 no more than a de minimis showing."). "[A]ny impairment or combination of impairments
19 which significantly limits [a person's] physical or mental ability to do basic work
20 activities" is considered "severe." 20 C.F.R. § 404.1520(c). "Basic work activities are
21 'abilities and aptitudes necessary to do most jobs, including, for example, walking,
22 standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80
23 F.3d at 1273 (citation omitted). "An impairment or combination of impairments may be
24 found not severe only if the evidence establishes a slight abnormality that has no more than
25 a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686
26 (9th Cir. 2005) (quotation marks omitted). In determining the severity of impairments, the
27 ALJ considers the claimant's testimony, treatment notes, imaging, reports of daily
28 activities, opinion evidence, and any other statements or observations in the record. 20

C.F.R. § 404.1529(a).

### 3. Analysis

The Court agrees with Plaintiff that the ALJ erred by concluding, during step two of the sequential analysis, that Plaintiff's orthopedic impairments were non-severe. In *Glanden*, the Ninth Circuit recently emphasized "that claimants need only make a de minimis showing for the analysis to proceed past [step two] and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." 86 F.4th at 843-44. *Glanden* also cited *Webb* as an example of a case where an ALJ erred by making a step-two finding of non-severity. *Id.* at 844.

In *Webb*, the claimant alleged disability in part due to "back pain" and presented evidence of "X-rays . . . [that] showed 'disc space narrowing' in his lower back." 433 F.3d at 685. Despite that and other evidence, "the ALJ found that Webb did not have a medically severe impairment or combination of impairments" and, "[h]aving made that finding, the ALJ ended his inquiry." *Id.* at 686. The Ninth Circuit reversed, holding that the ALJ erred by finding "that Webb lacked a medically severe impairment or combination of impairments despite objective medical evidence demonstrating" the existence of various impairments. *Id.* at 687. The court also held that the ALJ's adverse credibility finding as to Webb did not compel a different conclusion, because "Webb's clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss Webb's complaints as altogether unfounded. To the contrary, the doctors' reports and test results usually corresponded with the afflictions Webb perceived . . . . There is not, in this instance, the total absence of objective evidence of severe medical impairment . . . ." *Id.* at 688. The court concluded: "We do not intimate that Webb will succeed in proving that he is disabled and entitled to disability insurance benefits. But we do hold that the ALJ lacked substantial evidence to find that the medical evidence clearly established Webb's lack of a medically severe impairment or combination of impairments. The ALJ should have continued the sequential analysis beyond step two . . . ." *Id.*

Here, as in *Webb*, there was not a "total absence of objective evidence of severe

medical impairment." *Id.* at 688.  To the contrary, the record contains an array of objective medical evidence documenting significant degenerative and/or arthritic changes to Plaintiff's right knee and right shoulder,[2] as well as opinion evidence from medical sources who believed those impairments would significantly limit Plaintiff's ability to walk and carry (*i.e.*, to perform basic work activities).[3]  *Webb* suggests it was error for the ALJ to make a step-two non-severity finding under these circumstances, even if the ALJ otherwise identified permissible reasons for discrediting Plaintiff's symptom testimony.

The Court acknowledges that *Webb* and *Glanden* are not factually identical to this case and do not definitively identify the type of evidence that compels a step-two severity finding.  *Glanden*, 86 F.4th at 845 (noting that "[o]ur relevant caselaw" regarding a claimant's "step-two burden" is "limited").  Nevertheless, it is notable that the Commissioner has failed to identify any case upholding an ALJ's step-two finding of non-severity under remotely similar facts.  Additionally, the one case that was identified in *Webb* and *Glanden* as upholding a step-two non-severity finding—*Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005)—is easily distinguishable.  There, the claimant apparently did not come forward with any objective medical evidence of his alleged impairments apart from one easily manipulated test.  *Id.* at 1006 ("At first blush, it might appear that the positive Romberg test sufficiently bolstered Ukolov's claim of impairment.  However, the Romberg test is susceptible to subject manipulation, as the individual can control the extent of his unsteadiness. . . .  [U]nlike results from a blood pressure screening, an electrocardiogram (measuring heart rate), an electroencephalogram (measuring brain

---

[2]   AR at 585 [June 2018 report of MRI on right knee, showing, *inter alia*, "[s]evere full-thickness cartilage loss . . . at the weightbearing aspect of the medial femoral condyle" and "[d]egenerative signal in the posterior horn of the medial meniscus [with] [p]robable focal tear at the inferior margin"]; AR at 604 [x-ray report showing "[r]ight shoulder bone-on-bone osteoarthritis with large inferior glenohumeral osteophyte," "[c]ervical disc disease," and "advanced degenerative changes of the rectal humeral joint"].)

[3]   AR at 826 [Dr. Cunningham's report, concluding that "[b]ased on today's exam, [Plaintiff] should avoid ladders, heights, scaffolding due to arthralgias and current medications with safety risk"]; AR at 907 [Dr. Moussa's opinion form, stating that Plaintiff's impairments would limit Plaintiff to standing/walking for "less than 2 hours" in an eight-hour workday and would mean Plaintiff could "never" lift and carry 50 pounds in a competitive work situation].

activity), diagnostic Magnetic Resonance Imaging (MRI), a Computer Axial Tomography (CAT) Scan (a three-dimensional targeted x-ray), or other objective diagnostic techniques, a single positive Romberg result, unaccompanied by a diagnosis or finding of impairment, does not and cannot establish the existence of a disability."). Additionally, "none of the medical opinions" in *Ukolov* "included a finding of impairment." *Id.* Here, in contrast, Plaintiff's claims of impairment were corroborated by the very sorts of objective diagnostic tests—MRIs and x-rays—whose absence was deemed significant in *Ukolov*, and Drs. Moussa and Cunningham both opined that the arthritic and degenerative conditions depicted in those objective diagnostic tests would cause Plaintiff to be impaired in various respects. The Court thus concludes that the ALJ erred by finding that Plaintiff failed to meet his de minimis burden at step two. *Cf. Glanden*, 86 F.4th at 845-46 ("In *Ukolov*, . . . [the] claimant failed to show that he had any diagnosed impairments, and his physicians were unable to verify his alleged symptoms through any medical examinations or test results. Step two is intended to screen for precisely this sort of frivolous claim. Glanden's extensive medical history and explanation for his gap in treatment distinguish his case as one in which substantial evidence does not support the finding that the record clearly establishes the absence of severe impairments.") (citations omitted).[4]

---

[4] The dissent in *Glanden* noted that "[n]otwithstanding the majority opinion's emphasis on the rarity of step-two denials, recently we have affirmed step-two denials in several unpublished cases." *Glanden*, 86 F.4th at 848 n.1 (Graber, J., dissenting). In the Court's view, this case is factually distinguishable from those unpublished cases due to the existence of the objective medical evidence substantiating Plaintiff's claims of back and shoulder pain. *Compare Cyree v. Kijakazi*, 2023 WL 3862512, *1 (9th Cir. 2023) (affirming step-two non-severity finding where "[t]he record here contains no medical evidence to substantiate the existence of an impairment"); *Nelson v. Kijakazi*, 2023 WL 2182362, *1 (9th Cir. 2023) (affirming step-two non-severity finding where "[t]he treating physician did not specifically state an opinion that Nelson was unable to work during the relevant time period" and "[e]ven assuming that opinion is implied, there are no medical records from the relevant time period that support it"); *English v. Saul*, 840 F. App'x 241, 242 (9th Cir. 2021) (concluding that "[t]he ALJ did not err at step two when he found that English did not have a medically determinable impairment" where "English's symptoms lacked support in the medical record as a whole, which revealed English's consistently normal test results and clinical findings [and] the lack of any definitive diagnosis of endometriosis or thyroid problems"); *Collie v. Saul*, 837 F. App'x 497, 498 (9th Cir. 2021) (affirming step-two non-severity finding in light of "the evidence of relatively stable symptoms and clinical findings in the record" and "the lack of supporting medical evidence").

Given this determination, it is unnecessary to address Plaintiff's remaining assignments of error. Plaintiff does not request a remand for calculation of benefits pursuant to the credit-as-true rule and instead asks the Court to "vacat[e] the Social Security Administration's finding that [he] is not disabled." (Doc. 9 at 1.) Plaintiff also complains that the record was not fully developed. (*Id.* at 8-9.) The Court thus construes Plaintiff's brief as requesting for a remand for further proceedings, which is, at any rate, the correct remedy in the case where the disability analysis ended prematurely at step two. *Glanden*, 86 F.4th at 841 ("[Glanden] appeals the district court's judgment affirming an [ALJ's] denial of his application for social security disability insurance benefits at step two of the sequential analysis. We reverse and remand for further proceedings."); *Webb*, 433 F.3d at 688 ("The ALJ should have continued the sequential analysis beyond step two . . . . REVERSED and REMANDED.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed and remanded for further proceedings**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 25th day of June, 2024.

Dominic W. Lanza
United States District Judge